**Mae D. IVY, Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health & Human Services, Defendant–Appellee.**

No. 89–4794

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

April 25, 1990.

Stella Terrell, Cent. Mississippi Legal Services, Jackson, Miss., for plaintiff-appellant.

Steven D. Exum, Woodlawn, Md., George Phillips, U.S. Atty., Jackson, Miss., for defendant-appellee.

Before POLITZ, GARWOOD, and JOLLY, Circuit Judges.

POLITZ, Circuit Judge:

Mae D. Ivy appeals the rejection of her claim for disability insurance benefits under the Social Security Act, maintaining that since June 15, 1977 she has been unable to work because of her medical condition. For the reasons assigned we reverse and render, holding that Ivy is entitled to the social security benefits sought.

*Background*

This matter has been pending for five years. On April 16, 1985 Ivy applied for disability benefits, basing her claim for disability status on diabetes, hypertension, arthritis, and a spastic colon. Benefits were administratively denied and Ivy requested a hearing before an Administrative Law Judge (ALJ) who ruled that Ivy was not disabled. The Appeals Council disagreed, concluding that Ivy met the disability requirements listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 10.10 B. Benefits were not awarded, however, because Ivy had failed to establish the onset of the disabling condition before September 30, 1977, the last day upon which she met the special earnings requirement of the statute. Ivy responded by asking for reconsideration because her treating physician, Dr. J. Daniel Mitchell, had not provided relevant evidence. Recognizing that evidence from the treating physician might establish Ivy's entitlement to benefits, the Appeals Council vacated the ALJ's decision and remanded for further proceedings.

After conducting a hearing on remand, which included the taking of the testimony of Dr. Mitchell, the ALJ again ruled that the evidence did not establish that Ivy was disabled on or before September 30, 1977. The ALJ particularly decried the fact that the evidence did not contain "precise blood pressure readings [and] a record of the claimant's height and weight during the time of elevation of blood pressure."

Other than precise readings of blood pressure, height, and weight on and before the critical date, the record abounds with uncontroverted evidence, lay and expert, concerning Ivy's condition, both before and after September 30, 1977. The evidence is sufficient to compel the conclusion that Ivy is entitled to social security disability payments.

Ivy is 59 years old, stands 5'1" and weighs 269 pounds. She is a high school graduate with a relevant work history of being a bookkeeper, the self-employed operator of a secretarial service, and a flea-market proprietor. She suffers from diabetes, high blood pressure, arthritis, and a spastic colon. The hypertension results in headaches, dizziness, nausea, and blackouts. Ivy experiences shortness of breath and must use a walking stick to ambulate. She has poor use of her arms and legs and has lost her grip. She can no longer operate business machines. She occasionally joins her husband at a local flea market booth. Otherwise she spends her time at

home in bed, reading some, and listening to music.

The medical evidence clearly demonstrates that Ivy has a long, consistent history of serious obesity with progressively severe hypertension. In 1968 she was hospitalized for a hysterectomy. Hospital records reflect her weight as 184 pounds and blood pressure readings of 174 systolic over 76 diastolic. In 1972 she was seen by Dr. Mitchell who noted her obesity and recorded blood pressure readings of 142/86. During a hospitalization stay in 1974 her weight was recorded at 268 pounds and her diastolic readings consistently exceeded 100.

Ivy could not produce Dr. Mitchell's office records for the years 1973 through 1978. Dr. Mitchell explained that those records had been destroyed in the course of numerous burglaries of his office, but he testified that during those years he treated Ivy for hypertension and was aware of her obesity. The record before us contains the reports of other treating physicians, as well as hospital records before September 30, 1977 and thereafter. Dr. W.J. Patterson treated Ivy in 1979 and recorded blood pressure readings of 160/118. During a 1979 hospital stay for fainting spells Dr. Mitchell described Ivy as a well-developed, obese female with diabetes, hypertension, marked obesity, having gained much weight over the preceding 10 years. Weight was recorded as 257 pounds and blood pressure readings were 176/112.

In 1980 Dr. Patterson again examined Ivy, charting her weight at 277 pounds and her blood pressure at 130/100. The record of a 1982 hospitalization for rectal bleeding reflects a weight of 269 pounds. Throughout 1985 Ivy was treated by Dr. Edward R. North who noted a weight gain from March to September of 13 pounds, from 261 to 274. During this period Ivy's blood pressure was recorded as dangerously high, 200/120. In an April 1989 letter Dr. Patterson summarized Ivy's condition as that of a markedly obese female who could not be gainfully employed because of severe obesity, serious hypertension, and diabetes mellitus. Ivy's weight was noted as 270 pounds and her blood pressure was recorded as 200/100. Her medications included Normodyne, Inderide, Cardizen, and NPH insulin.

These medical records are corroborated by lay testimony. Ivy testified that her weight had been near 269 pounds for the past 10 years, that her blood pressure first became problematic in 1962, and that she had been treated continuously for hypertension for 25 years. Ivy's husband testified about his wife's long battle with obesity and hypertension. He attested to his wife's high blood pressure for several years, recalling that it had become a matter of substantial concern in 1973 or 1974 and had worsened since. He added that her weight had varied some but stayed very near 270 pounds since 1974.

Dr. Mitchell was called to testify about the gap in his medical records from 1973 to 1978. He explained that the records were destroyed in the various burglaries, and testified that he had sustained some loss of memory because of his own health problems. He could not testify to precise readings on any given date without the aid of the contemporaneously-made notations, but he was specific in his recollection of Ivy's condition during that period. He stated that Ivy's weight was about the same then as now, in the neighborhood of 267 pounds, and that her blood pressure levels were always outside of desirable readings. Dr. Mitchell recalled that Ivy's diastolic readings persistently exceeded 100 during the five-year period, 1975 through 1979.

Despite this undisputed evidence the ALJ rejected Ivy's disability claim for lack of precise height, weight, and blood pressure readings in the months and years leading up to September 1977. The Appeals Council declined to review, and the findings of the ALJ became the position of the Secretary. Ivy petitioned for judicial review and the matter was referred to a magistrate who recommended rejection of Ivy's claim. The district court accepted the magistrate's recommendations; Ivy timely appealed.

*Analysis*

Ivy maintains that she is entitled to disability benefits because she established her

disabling medical impairment as best she could under the circumstances. The Secretary contends that the ALJ's decision is supported by substantial evidence because absent contemporaneous documentation or the accurate recollection of the treating physician Ivy did not establish disability during the insured period. We conclude that the ALJ's decision is based on a faulty premise and an incorrect application of governing precedents and principles.

■ To qualify for disability benefits a claimant must demonstrate an inability to "engage in any substantial gainful activity" attributable to a medically determinable physical or mental impairment which can be expected to last for at least 12 months. *Jones v. Heckler,* 702 F.2d 616 (5th Cir.1983). Regulations promulgated by the Secretary establish a sequential evaluation process for determining disability. 20 C.F.R. § 404.1520. Under these regulations, any claimant meeting or equaling a listed medical impairment will be found disabled without consideration of age, education, and work experience. Id.

Excessive obesity is one of the medical impairments listed in the regulations. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 10.10. To aid in the evaluation of obesity, the Secretary has determined that persons whose weights equal or exceed specified weights may be entitled to benefits where they also suffer from one of the following impairments:

(1) history of pain and limitation of motion in a weight bearing joint or spine;

(2) hypertension with a diastolic blood pressure persistently in excess of 100 mm.;

(3) a history of congestive heart failure;

(4) chronic venous insufficiency; or

(5) respiratory disease.

*Id.*

■ The Appeals Council determined that Ivy's weight and blood pressure at the time of the hearing exceeded those required to establish an impairment of disabling severity. However, this finding alone is not sufficient to discharge Ivy's burden of proof. A claimant is eligible for benefits only if the onset of the qualifying medical impairment began on or before the date the claimant was last insured. POMS § DI 25501.050(B)(1). Claimants bear the burden of establishing a disabling condition before the expiration of their insured status. *Milam v. Bowen,* 782 F.2d 1284 (5th Cir.1986). Factors relevant to the determination of the date of disability include the individual's declaration of when her disability began, her work history, and available medical history. Soc.Sec.R. 83–20, 1983 CE 109. The Secretary must use the claimant's statement alleging when disability began as the starting point in determining the onset of nontraumatic disabilities. *Id.* The claimant's stated onset date is used as the established onset date when it is consistent with available evidence. *Id.* Furthermore, a claimant's onset date may be rejected only if reasons are articulated and the reasons given are supported by substantial evidence. *Mills v. Secretary,* No. 82–AR–2268–W, 1988 WL 54673 (N.D.Ala. 1988). Substantial evidence has been defined as such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

Ivy unqualifiedly asserts that her condition deteriorated to a disabling state by June 15, 1977. The ALJ determined that her work history corroborated her alleged onset date because "there is no indication that the claimant has engaged in substantial gainful activity since her alleged onset date." As noted, however, the ALJ denied Ivy's claim because of her failure to offer medical evidence reflecting precise blood pressure readings, height measurements, and weight amounts on the onset date or at least before September 1977.

■ Although medical evidence serves as the primary element in the onset determination, the ALJ's restrictive definition of "medical evidence" as contemporaneous clinical test results is incorrect. *See Parsons v. Heckler,* 739 F.2d 1334 (8th Cir. 1984). Medically acceptable evidence includes observations made by a physician

during physical examination and is not limited to the narrow strictures of laboratory findings or tests results. Social Security Law and Practice, § 44.3. To hold otherwise would unfairly penalize those claimants who, through no fault of their own, cannot produce contemporaneous medical records. The ALJ's draconian standard would require those unfortunate claimants attempting to establish a disability onset date without the benefit of contemporaneous medical records to produce, in lieu thereof, a physician with a perfect memory. Such a physician ostensibly would be required to recall the exact dates and precise readings of non-remarkable clinical tests performed years earlier. Experience teaches that any trier-of-fact should take any such testimony *cum grano salis.*

 The ALJ's ruling is not consistent with the policy of the Social Security Administration as reflected in agency rulings. The production of precise medical records is not a requisite to the establishment of a disability onset date. Rather, the agency expects the all-too-common situation where adequate medical records are no longer available, and opined that in such cases it is necessary to infer the onset date from "the medical and other evidence that describe the history and symptomatology of the disease process." Soc.Sec.R. 83–20 at 112. In addition, established policy provides that information may be obtained from family members, friends, and former employers regarding the course of the claimant's condition. *Id.* Finally, noncontemporaneous medical records are relevant to the determination of whether onset occurred on the date alleged by the claimant. *Basinger v. Heckler,* 725 F.2d 1166 (8th Cir.1984); Soc. Sec.R. 83–20, 1983 CE 109. "Subsequent medical evidence is relevant ... because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status." *Basinger,* 725 F.2d at 1169; *Parsons v. Heckler.*

In the case at bar the ALJ rejected uncontroverted evidence in determining that Ivy failed to establish the onset of her disability before the expiration of her insured status. Her work history, the testimony of her husband, her own testimony, the medical evidence including the general opinions of Dr. Mitchell, and her noncontemporaneous medical records all are consistent with Ivy's claim that her disability began on June 15, 1977. A fair reading of the evidence compels the finding, made by the Appeals Council, that Ivy is presently disabled. That same reading also compels the conclusion that Ivy's medical condition reached a disabled status as Ivy attested, in June 1977, prior to the termination of her insured status on September 30, 1977.

The judgment of the district court is REVERSED, judgment granting Ivy disability benefits is RENDERED, and the case is returned to the district court for the entry of a judgment consistent herewith.