United States Court of Appeals,

Fifth Circuit.

No. 91-7390.

Neva SPELLMAN, Plaintiff-Appellant,

v.

Donna E. SHALALA, M.D.,[1] Secretary of Health and Human Services, Defendant-Appellee.

Sept. 13, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before GOLDBERG, SMITH, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Neva Spellman appeals the district court's order granting summary judgment for the Secretary of Health and Human Services ("Secretary"). Spellman argues that the Secretary erred in determining the onset date of her disability and failed to give proper weight to her treating physician's opinion that she was incapable of performing sedentary work. Because the Secretary failed to determine properly the onset date of Spellman's disability, we affirm the district court's judgment in part and reverse and remand in part.

I

Spellman is a sixty-nine year old woman with a high school education. She worked as an assistant manager at a credit union for twenty six years, where she supervised thirteen employees, occasionally travelled, and was on the telephone six hours a day. Between 1982 and 1985, Spellman suffered from chronic pulmonary disease, gastroesophageal reflux, and several other physical ailments.

The medical evidence also shows that Spellman complained to her doctors—who were treating her physical maladies—that she did not sleep well, suffered from chronic fatigue, and was depressed, anxious, and nervous. While Spellman was hospitalized for acute tracheal bronchitis in

---

[1]Donna E. Shalala, M.D., is substituted for her predecessor Louis W. Sullivan, M.D., Secretary of Health and Human Services, pursuant to Fed.R.App.P. 43(c)(1).

September 1982, her physician reported that she was depressed, and he treated her with Elavil, an antidepressant drug, during her hospital stay.[2] When Spellman was hospitalized for bronchitis in April 1983, her treating physician, Dr. Milton V. Davis,[3] had Dr. Murray Pizette[4] examine her to determine the cause of some of her physical ailments. Spellman told Dr. Pizette that she had become more depressed and anxious. Concluding that Spellman suffered from mixed anxiety depression, Dr. Pizette prescribed Sinequan, an antidepressant and antianxiety drug. A couple of months later, the dosage of Sinequan was increased from 25 mg twice a day to 75 mg twice a day. The record also indicates that Spellman was taking Adapin, an antianxiety and antidepressant drug, in December 1983. In addition, there is evidence that Spellman was taking Xanax and Ativan, which were drugs for treating anxiety, including anxiety related to depression. In April 1984, Dr. Davis submitted a report to Spellman's disability insurer, stating that she was "incapable of minimal (sedentary) work" due to her respiratory problems.

In 1986, three mental health experts[5] examined Spellman; each concluded that Spellman suffered from a histrionic personality disorder with resulting functional restrictions, particularly an inability to cope with work-related stress and to behave in an emotionally stable manner. Dr. Mattar also reported that Spellman was able to function quite well with her personality disorder for decades, but that her pulmonary problems caused her to be depressed over time. In 1988, Spellman was again examined by three mental health experts[6], who found that she suffered from histrionic personality

---

[2]There is also evidence that Spellman suffered from chronic fatigue and depression before September 1982. When Spellman was hospitalized for chest pain in 1979, she told her doctor that she suffered from chronic fatigue. The record also indicates that during her hospital stay she was given Elavil. In addition, a prescription for Elavil was refilled in May 1982.

[3]Dr. Davis began treating Spellman in January 1983 for gastrointestinal and respiratory difficulties. Dr. Davis was a board-certified surgeon.

[4]Dr. Pizette was a board-certified specialist in internal medicine.

[5]The three mental health experts were Dr. Madison V. Scott, Ph.D., a psychologist and consultative examiner for the Social Security Administration, Dr. Enrique Vasallo, M.D., a board-certified psychiatrist, and Dr. Chip Mattar, Ph.D., a psychologist.

[6]The three doctors were Dr. Scott, Dr. J. Randall Price, a psychologist, and Dr. Ben Goodwin, a psychiatrist.

disorder accompanied by depressive symptoms. Dr. Goodwin also stated that Spellman had been unable to function in a work setting for the past five to six years, and he opined that her mental condition was deteriorating.

On October 24, 1983, Spellman first filed for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. (1988), alleging disability from September 8, 1982—the date she stopped working, due to lung problems. After her application was denied initially and on reconsideration, Spellman requested a hearing. A preliminary hearing was held before an Administrative Law Judge ("ALJ"), who found that Spellman was not disabled because her physical impairments were not severe. After the Appeals Council denied Spellman's request for review, she filed an action seeking judicial review in federal district court. The district court remanded the action for further proceedings consistent with certain new mental impairment regulations promulgated by the Secretary. After obtaining the mental status reports from Drs. Scott, Vassallo, and Mattar, and holding a supplemental hearing, the ALJ determined that Spellman was not disabled due to her physical and mental impairments.

After the Appeals Council adopted the ALJ's recommended decision, the district court reopened Spellman's action and found that the determination that Spellman's mental disorder did not prevent her from performing her past relevant work was not supported by substantial evidence. The district court therefore remanded the case to the Secretary, who ordered another supplemental hearing. Dr. Price testified at the hearing as a medical advisor. Dr. Price stated that Spellman's depression appeared to decrease from 1986 through 1988, while she became more hysterical and histrionic during that same time period. Dr. Price recommended that Spellman avoid job situations requiring stressful social interaction, including her former occupation as assistant manager of a credit union. A vocational expert also testified that Spellman's past work was very stressful and that a person who had difficulty handling stress would be unable to perform Spellman's past work.

Subsequently, the ALJ found that Spellman was not disabled due to her mental impairment, but the Appeals Council refused to adopt the ALJ's findings and conclusions with regard to Spellman's alleged disability. The Appeals Council found that Spellman had chronic obstructive

pulmonary disease, gastroesophageal reflux, and leg cramps. The Appeals Council also found that Spellman had a mental impairment characterized by mood hysteria, a negative affect, depression, and an inability to cope with work-related stress. The Appeals Council determined that Spellman's physical impairments were severe as of September 8, 1982, but that she did not have a severe mental impairment until October 1, 1985. The Appeals Council found that prior to October 1, 1985, Spellman's impairments limited her to sedentary work which did not expose her to environmental or industrial pollutants. The Appeals Council concluded that Spellman was able to perform her past relevant work prior to October 1, 1985, because it was sedentary, and was performed in a clean environment. The Appeals Council found that the mental demands of Spellman's job exceeded her residual functional capacity as of October 1, 1985, because her mental impairment became severe after that date. Thus, the Appeals Council concluded that Spellman was disabled beginning October 1, 1985. The district court reopened Spellman's action, and a magistrate judge found that the Appeals Council's decision was based on substantial evidence. Adopting the magistrate judge's findings, the district court granted summary judgment for the Secretary. Spellman appeals.

II

On review, this Court determines whether substantial evidence exists in the record as a whole to support the ALJ's factual findings and whether the proper legal standards were applied. *Griego v. Sullivan,* 940 F.2d 942, 945 (5th Cir.1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir.1990). If substantial evidence supports the Secretary's findings, they are conclusive and must be affirmed. 42 U.S.C. § 405(g) (1988); *Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971); *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir.1990). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson,* 402 U.S. at 401, 91 S.Ct. at 1427; *Selders,* 914 F.2d at 617. It is more than a mere scintilla, and less than a preponderance. *Moore v. Sullivan,* 919 F.2d 901, 904 (5th Cir.1990). "This Court may not reweigh the evidence or try the issues de novo. Conflicts in evidence are for the Secretary and not the courts to resolve." *Selders,* 914 F.2d at 617 (citation omitted).

We review the district court's grant of a summary judgment motion de novo. *Davis v. Illinois*

*Central R.R.,* 921 F.2d 616, 617-18 (5th Cir.1991). Summary judgment is appropriate if the record discloses "that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324-25, 106 S.Ct. at 2553-54. While we must "review the facts drawing all inferences most favorable to the party opposing the motion," *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986), that party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

A

Spellman argues that the Appeals Council failed to comply with Social Security Ruling 83-20[7] ("SSR 83-20"), because its determination of the onset date of her disability was arbitrary, and therefore not based on an informed judgment. Spellman also claims that the Appeals Council failed to comply with SSR 83-20 by failing to consult a medical advisor in determining the onset day of her disability.

Spellman alleges a disability onset date of September 8, 1982, which was the date she stopped working. The Appeals Council, however, determined that the onset date was October 1, 1985. In determining the onset date of Spellman's disability, the Appeals Council found that the first evidence of a significant mental impairment was in April 1986, when Spellman had her first consultative mental status evaluation. The Appeals Council also found that no medical evidence indicated that Spellman's

---

[7]Social Security Rulings are "binding on all components of the Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that have been adopted by the Administration." 20 C.F.R. § 422.406(b)(1) (1991); *see also Hall v. Schweiker,* 660 F.2d 116, 119 n. 4 (5th Cir. Unit A Sept. 1981).

mental impairment was severe before April 1986. The Appeals Council apparently so found because none of the medical reports before April 1986 stated that Spellman's ability to function was restricted by her mental impairment. Nevertheless, the Appeals Council concluded that it was "reasonable to assume that [Spellman's] mental impairment was severe as of October 1, 1985, approximately six months prior to the April 29, 1986, psychological examination," and that consequently, Spellman was disabled as of October 1, 1985, because "the mental demands of the work exceeded [her] residual functional capacity." Record Excerpts for Spellman, tab 5, at 11-12.

SSR 83-20 prescribes the policy and procedure by which the Secretary should determine the onset date of a disability. *See* SSR 83-20 (1983). SSR 83-20 stresses that "[i]n many claims, the onset date of [a disability] is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits." *Id.* As a result, "it is essential that the onset date be correctly established and supported by the evidence." *Id.* "Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence." *Id.; see also Ivy v. Sullivan,* 898 F.2d 1045, 1048 (5th Cir.1990). These three factors are often evaluated together. SSR 83-20. The starting point of determining the onset date is the claimant's allegation as to when the disability began, *id.; Ivy,* 898 F.2d at 1048, and the date the disability caused the claimant to stop work is often very significant. SSR 83-20. Nevertheless, the medical evidence is the primary element in the determination of onset of disability. *Id.* "The claimant's stated onset date is used as the established onset date when it is consistent with available evidence." *Ivy,* 898 F.2d at 1048. SSR 83-20 recognizes that with slowly progressive impairments, including mental impairments, "it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." SSR 83-20. Accordingly,

> [i]n such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process. Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e., be decided on medical grounds alone) before onset can be established. ....

> Precise Evidence Not Available—Need for Inferences

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment occurred some time prior to the date of the first

recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an *informed judgment* of the facts in the particular case. This judgment, however, must have a *legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.* If there is information indicating that additional medical evidence is available, such evidence should be secured before inferences are made.

If reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional medical evidence is not available, it may be necessary to explore other sources of documentation.

*Id.* (emphasis added).

While there are no cases in this Circuit that discuss or apply the above-quoted provision of SSR 83-20, both the Ninth and Sixth Circuits have applied that provision. In *Blankenship v. Bowen,* 874 F.2d 1116 (6th Cir.1989), the claimant filed for disability insurance benefits, alleging disability due to physical and mental impairments since 1979. *Id.* at 1117. Three psychiatrists found that the claimant suffered from a mental impairment before 1985, and in November 1985 another psychiatrist, Dr. Lury, found that the claimant suffered from a psychiatric disorder that left him 1007 disabled. *Id.* at 1118-20. Dr. Lury also opined that the claimant's mental deterioration was of a progressive nature. *Id.* at 1120. The ALJ concluded that the claimant suffered from both a physical impairment and a progressive mental disorder since 1979, but was not disabled until November 1985. *Id.* The ALJ found that prior to November 1985, the claimant's mental disability was not functionally limiting and that the claimant's physical impairment limited the claimant to low stress work. *Id.* The ALJ determined that the claimant's mental disability was of such severity in November 1985 that it restricted the claimant's functional capacity. *Id.* The ALJ therefore found that the claimant was disabled beginning in November 1985. *Id.* After the district court affirmed the ALJ's decision, the Sixth Circuit found that the claimant's mental impairments were of a slowly progressive nature, and that as a result, the onset date of the disability was not clear from the medical evidence. *See id.* at 1122. Consequently, the court reversed the district court's judgment and remanded the case to the Secretary for a redetermination of the onset date, instructing the Secretary to obtain additional medical evidence regarding the progression of the claimant's mental impairment and to consult a medical advisor pursuant to SSR 83-20. *See id.* at 1124; *see also id.* (Nelson, J., concurring) ("SSR

83-20, as I read it, makes it clear that in a case such as this the ALJ is not to determine the onset date without having called on the services of a medical advisor.").

In *Morgan v. Sullivan,* 945 F.2d 1079 (9th Cir.1991), the claimant filed for disability insurance benefits, alleging disability since 1977 due to physical and mental impairments. *Id.* at 1081. The ALJ found that the claimant had no medically determinable mental impairment before 1979, and that he was not disabled because he could perform his past relevant work. *Id.* On appeal, the Ninth Circuit stated that while the first unambiguous evidence of a mental impairment was in 1980, there was evidence that the claimant may have suffered from a disabling mental impairment prior to 1979, because there were medical reports stating that the claimant suffered from a great deal of stress. *See id.* at 1081-82. In addition, one report in early 1980 stated that the claimant's condition had become progressively worse in the past year. *Id.* at 1082. Citing *Blankenship,* the Ninth Circuit stated that SSR 83-20 "suggests that when the evidence regarding date of onset of mental impairment is ambiguous, as it is here, the ALJ should determine the date based on an informed inference." *Id.* at 1082. The Ninth Circuit found that such an inference was not possible without the assistance of a medical advisor, and that because the ALJ failed to consult a medical advisor, the ALJ's onset date determination was not based on an informed inference. See *id.* at 1083. The Ninth Circuit reversed the district court's judgment and remanded, instructing the ALJ to redetermine the onset date of the mental impairment with the assistance of a medical advisor, pursuant to SSR 83-20. *See id.*

Because a correct determination of the onset date of a disability is critical, *see* SSR 83-20, we agree with the Sixth and Ninth Circuits' interpretation of SSR 83-20. We therefore hold that in cases involving slowly progressive impairments, when the medical evidence regarding the onset date of a disability is ambiguous and the Secretary must infer the onset date, SSR 83-20 requires that that inference be based on an informed judgment. The Secretary cannot make such an inference without the assistance of a medical advisor.[8] *See DeLorme v. Sullivan,* 924 F.2d 841, 848 (9th Cir.1991) ("In

---

[8]The Seventh Circuit has held that, where there is a complete medical chronology of a claimant's impairment, the ALJ may choose an appropriate onset date of disability, without the aid of a medical advisor. *See Pugh v. Bowen,* 870 F.2d 1271, 1278 & n. 9 (7th Cir.1989); *contra id.* at 1279 (Fairchild, J., dissenting) (stating that the ALJ had to infer the onset date of disability because the exact onset date was unclear, and that therefore the ALJ should have consulted a

the event that the medical evidence is not definite concerning the onset date [of a disability] and medical inferences need to be made, SSR 83-20 requires the [ALJ] to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination.").

The medical evidence with regard to the onset date of Spellman's disability is ambiguous, because it is unclear when Spellman's mental impairment first restricted her functional capacity. Although Spellman was diagnosed as depressed and prescribed medication for anxiety and depression before October 1, 1985, both parties agree that Spellman never had a consultative mental status examination by a mental health professional prior to Dr. Scott's examination in April 1986. *See* Brief for Spellman at 31; Brief for Secretary at 13. In addition, the Appeals Council failed to explain why October 1, 1985 was the proper onset date, and nothing in the record suggests that October 1, 1985 was significant with regard to Spellman's disability. The fact that the Appeals Council arbitrarily selected an onset date six months prior to the first mental evaluation suggests that the medical evidence was ambiguous with regard to the onset date. The evidence in the record indicates that Spellman may have suffered from a disabling mental impairment before October 1, 1985. Spellman quit work on September 8, 1982. There is evidence that Spellman had been treated by physicians for depression and anxiety before April 1986. Furthermore, there is evidence that Spellman suffered from chronic fatigue during the relevant period, which may have indicated a mental impairment. Dr. Goodwin also stated in 1988 that Spellman's mental impairment was of a slowly progressive nature, and that Spellman had been unable to work for the past five or six years.

The Appeals Council's finding that Spellman's mental impairment was not severe before October 1, 1985 apparently was based on the absence of reports prior to April 1986 stating that Spellman's ability to function was restricted by her depression. However, lack of evidence alone is not sufficient to support a finding that an impairment did not exist at a disabling level of severity. *See Lichter v. Bowen,* 814 F.2d 430, 431 (7th Cir.1987) (holding that ALJ improperly rejected claimant's disability onset date on the ground that claimant failed to produce medical evidence supporting

---

medical advisor in inferring the onset date, pursuant to SSR 83-20). The holding in *Pugh* is inapposite here because the medical chronology of Spellman's mental impairment is incomplete.

alleged onset date, court stated that lack of evidence not determinative so long as alleged onset date was consistent with medical evidence and that ALJ should have applied SSR 83-20); *see also Swanson v. Secretary of Health & Human Services,* 763 F.2d 1061, 1065 (9th Cir.1985) ("[T]he critical date is the date of *onset* of disability, *not* the date of diagnosis."). We conclude that the Appeals Council's determination of the onset date was not based on a "legitimate medical basis," and, therefore, was not "an informed judgment of the facts." We also conclude that because Spellman's mental impairment was of a slowly progressive nature, and the medical evidence was ambiguous with regard to the disability onset date, the Appeals Council could not have inferred an onset date based on an informed judgment of the facts without consulting a medical advisor.[9] Therefore, we remand this case to the Secretary,[10] *see Nolen v. Sullivan,* 939 F.2d 516, 520 (7th Cir.1991) (where Secretary gave no reason for its determination of onset date of disability, case remanded for redetermination of onset date pursuant to SSR 83-20), and instruct the Secretary to consult a medical advisor in redetermining the onset date of Spellman's disability.[11]

---

[9]Although a medical advisor, Dr. Price, testified at the second supplemental hearing, Dr. Price was questioned regarding whether or not the mental evaluations performed after 1985 established disability. Neither the ALJ nor Spellman's counsel questioned Dr. Price about whether Spellman's mental impairment affected her ability to work prior to her first psychiatric examination by Dr. Scott in April 1986. The Secretary argues that because Spellman failed to question the medical advisor about the onset date of her disability, the Secretary did not have to consult a medical advisor in determining the disability's onset date. We disagree. SSR 83-20 places the burden of consulting a medical advisor on the Secretary, not the claimant.

[10]Spellman argues that the record strongly supports a disability onset date of September 8, 1982, and that, therefore, a remand is unnecessary. Because Spellman's disability action has been pending since 1982, it is understandable that Spellman prefers that we make the final determination. However, a remand is necessary because the Secretary must redetermine the onset date after consulting a medical advisor.

[11]The Appeals Council based its determination that the onset date of Spellman's disability was October 1, 1985, on its finding that Spellman's mental impairment was not severe prior to that date. Spellman argues that the Appeals Council failed to apply the proper legal standard in determining the severity of her mental impairment under step two of the five-step sequential procedure for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(c) (1992).

> "An impairment can be considered as not severe only if it is a slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'

*Estran v. Heckler,* 745 F.2d 340, 341 (5th Cir.1984) (quoting *Brady v. Heckler,* 724 F.2d

B

Spellman next argues that the Secretary was required to give controlling weight to her treating physician's opinion that she was physically incapable of engaging in sedentary work.[12] The Appeals Council determined that Spellman suffered from chronic obstructive bronchopulmonary disease, gastroesophageal reflux, and leg cramps. The Appeals Council found that while these were severe physical impairments, Spellman still was able to perform sedentary work, which did not involve environmental or industrial pollutants. The Appeals Council concluded that Spellman was able to perform her past relevant work because it required sedentary exertion and was performed in a clean environment. Dr. Davis, Spellman's treating physician, however, indicated on an insurance form dated April 1983 that Spellman suffered from "severe limitation of functional capacity; incapable of minimal (sedentary) activity." Record on Appeal, vol. 2, at 128.

"If ... a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, ... it [will be given] controlling weight." 20 C.F.R. 404.1527(d)(2) (1992). The ultimate determination of disability lies with the Secretary:

> [The Secretary] is responsible for making the determination or decision about whether [a claimant] meets the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that [a claimant] is disabled. A statement by a medical source that [a claimant is] "disabled" or "unable to work" does not mean that [the Secretary] will

914, 920 (11th Cir.1984)). In *Stone v. Heckler,* 752 F.2d 1099 (5th Cir.1985), we stated that "unless the correct standard is used [in determining the severity of an impairment], the claim must be remanded to the Secretary for reconsideration." *Id.* at 1106. We agree with Spellman that the Secretary failed to indicate that it evaluated the severity of her mental disability in accordance with *Estran* and *Stone.* On remand, the Secretary should reconsider the facts in light of the proper standard set forth in those cases. *See Stone,* 752 F.2d at 1106 (We will "assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used.").

[12]The Secretary argues that Spellman waived this issue, because she failed to argue below that she was physically incapable of performing her past relevant work. Therefore, the Secretary claims that the only issue before this Court is Spellman's mental ability to perform her past relevant work. We disagree with the Secretary, because the record indicates that Spellman adequately argued below that she was physically incapable of performing her past relevant work.

determine that [a claimant] is disabled.

20 C.F.R. 404.1527(e)(1).

Dr. Davis indicated that Spellman was totally disabled due to chronic obstructive bronchopulmonary disease, aspiration bronchitis, gastroesophageal reflux, which were accompanied by dyspnea, fatigue, and cough. There is some evidence in the record, however, that those physical impairments did not affect Spellman's ability to perform her past job as an assistant manager of a bank. Spellman's bronchial condition responded well to treatment, and her coughing improved over time. Spellman's lungs were normal, although there was occasional rhonchi and wheezes, and she had good air entry. In addition, there is evidence that Spellman jumped rope for short periods, did small household tasks, read, gardened, fished in warm weather while sitting down, went shopping occasionally, and engaged in a exercise regimen in order to improve her exercise tolerance. Spellman also continued to smoke cigarettes every day, despite her doctor's request that she quit. The Appeals Council acted within its discretion in rejecting the treating physician's opinion that Spellman could not perform sedentary work, because Dr. Davis's opinion was inconsistent with the other substantial evidence in the record.

## III

For the foregoing reasons, we AFFIRM the district court's judgment in part, and REVERSE and REMAND in part. The Secretary is instructed on remand to redetermine the onset date of Spellman's disability with the assistance of a medical advisor, pursuant to SSR 83-20.