Barbara A. EASTHOUSE, Plaintiff,

v.

Donna E. SHALALA, Secretary, Health and Human Services, Defendant.

Civ. A. No. 94–4063–DES.

United States District Court,
D. Kansas.

Feb. 13, 1995.

Kelly C. Whitford, Kenneth M. Carpenter, Carpenter Chartered, Topeka, KS, for plaintiff.

Jackie A. Rapstine, Office of U.S. Atty., Topeka, KS, for defendant.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

## I. INTRODUCTION

This matter is before the court on plaintiff's motion for summary judgment (Doc. 8) and defendant's motion for order affirming the Secretary's decision and in response to plaintiff's motion for summary judgment (Doc. 10). The court has examined the record and is now ready to rule on the motions.

## II. PROCEDURAL BACKGROUND

On October 25, 1990, plaintiff Barbara Easthouse filed an application for a period of disability and disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* In the application, plaintiff alleged an onset date of disability of March 15, 1986. On December 13, 1990, plaintiff was notified that she was not entitled to disability benefits.

On January 21, 1991, plaintiff filed a request for reconsideration. On August 30, 1991, plaintiff was notified that she was eligible for benefits, but that her disability onset date was established at September 1, 1990.

Plaintiff filed a timely request for hearing on November 5, 1991, and said hearing was conducted on June 18, 1992, before Administrative Law Judge ("ALJ") Harvey L.

McCormick. On November 17, 1992, the ALJ issued a Notice of Decision–Denial denying plaintiff's request for an additional period of disability and disability insurance benefits from March 15, 1986, to September 1, 1990.

Plaintiff filed a timely Request for Review by the Appeals Council on January 19, 1993. On February 18, 1994, the Appeals Council denied the request for review. The ALJ's decision of November 17, 1992, stands as the final decision of the Secretary. Plaintiff commenced this action on April 19, 1994.

## III. FACTUAL BACKGROUND

On November 3, 1981, plaintiff was taken to the emergency room complaining that she had something stuck in her throat. During this visit she experienced an episode of apparent generalized tonic clonic activity associated with loss of consciousness and post ictal confusion. Plaintiff was in a state of confusion for at least one hour and her tongue was swollen. The emergency room nurses described the episode as "seizure." Plaintiff's history showed a similar episode occurred approximately two years earlier.

The diagnosis from this episode was seizure disorder, idiopathic in nature. Because there had been two episodes of generalized tonic clonic seizures, an anticonvulsant with Phenobarbital was prescribed.

In May 1982, plaintiff was evaluated, although no recurrent seizures had been reported. Plaintiff was scheduled for recheck in six months but did not meet the schedule.

In April 1983, plaintiff was evaluated in the emergency room approximately one week after suffering a generalized tonic clonic seizure. Plaintiff reported she had stopped taking her medication because it made her drowsy to the point of falling asleep during the ordinary course of the day. Plaintiff was placed on Tegretol and the Phenobarbital was gradually withdrawn. Plaintiff was pregnant at the time, and medical personnel stressed the importance of closely monitoring her condition.

On July 2, 1983, plaintiff suffered another grand mal seizure. Patient had run out of medication on June 30. Plaintiff and her husband were cautioned about the danger of running out of medication and the effects of sudden withdrawal.

On January 28, 1985, plaintiff was rechecked with no definite seizure activity in the last one and one-half years.

On March 4, 1985, plaintiff suffered two grand mal seizures. Plaintiff had missed her noon Tegretol and had not yet taken the evening dosage.

On June 7, 1985, plaintiff was checked after experiencing three grand mal seizures in one week. Plaintiff was still taking Tegretol and had been compliant. An increased dosage of medication was prescribed.

On October 11, 1985, during a recheck, plaintiff complained of increasing problems with forgetfulness. She was advised this was unlikely a side effect of the medication. Because of plaintiff's excessive drowsiness on Phenobarbital and the forgetfulness with Tegretol, Depakene was initiated.

In March 1986, plaintiff could no longer work in her position as an insurance claims processor because of the increased seizure activity, her increased need for sleep and inability to fully function during the day, her difficulties with concentration and memory and her general inability to perform simple spelling, grammar and writing activities.

Following a seizure, plaintiff was admitted to the hospital on December 17, 1988, complaining of global headache, mental confusion, memory lapses, and some inappropriate responses. Plaintiff also could not remember what had occurred the day before.

Plaintiff was assessed as having a "poorly controlled" seizure disorder. Her Tegretol level was technically within the therapeutic range. On December 18, 1988, the dosage of Tegretol was increased in an attempt to control the seizures. On December 21, 1988, plaintiff was again admitted to the hospital after suffering a seizure. Plaintiff was again assessed as having a "poorly controlled" seizure disorder. A second anticonvulsant was prescribed.

Plaintiff again appeared at the hospital on December 28, 1988, complaining that she felt an impending seizure. She was monitored

and no seizure was forthcoming. Plaintiff's condition was described as a "complex, difficult to control seizure disorder."

On March 31, 1990, plaintiff was admitted to the emergency room complaining of increasing petit mal seizures and grand mal seizures. Plaintiff was instructed to keep an accurate record of both petit and grand mal seizures.

On September 13, 1990, plaintiff was seen by her physician complaining of increased lapses of consciousness and continuing sedation from the medication. The report concludes that "It is not safe for her to drive, operate heavy equipment or to be put in situations of responsibility where others lives would depend on her alertness. It is unlikely we will ever have complete control of her seizures."

On January 16, 1991, plaintiff was described as having "seizure disorder with poor clinical control." By February 6, 1991, plaintiff was having "a record number of seizures, most partial complex, a few grand mal." By March 1991, things had not improved and plaintiff was found to be depressed with lowered self-esteem. By mid-March, plaintiff was described as suffering from "major depression secondary to physical problems."

From May to August 1991, plaintiff continued to experience seizures and was "definitely not controlled on medication, compliance is not the problem." It was also recommended that plaintiff explore the possibility of surgery "since chemical methods are just not working."

Plaintiff has not been gainfully employed since 1986. The chronology clearing demonstrates that plaintiff's seizure disorder has always been poorly controlled.

## IV. SECRETARY'S DECISION

The ALJ made the following findings:

1. The claimant met the disability insured status requirements of the Act on March 15, 1986, the date the claimant stated she became unable to work, and continued to meet them through December 31, 1991.

2. The claimant has not engaged in substantial gainful activity since March 15, 1986, her attempt to work at a physician's office thereafter is considered an unsuccessful work attempt as that term is defined in the regulations.

3. The medical evidence establishes that claimant has a severe seizure disorder and depression, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The testimony of the claimant was only partially credible for reasons set forth in detail elsewhere in this decision.

5. The claimant has the residual functional capacity to perform work related activities except for work involving more than a simple, sedentary office type job (20 CFR 404.1545).

6. The claimant's past relevant work as an insurance claims processor did not require the performance of work related activities precluded by the above limitation(s) (20 CFR 404.1565).

7. The claimant's impairment did not prevent the claimant from performing her past relevant work.

8. The claimant was not under a "disability" as defined in the Social Security Act, at any time from March 15, 1986 through September 1, 1990 (20 CFR 404.1520(e)).

It is the decision of the Administrative Law Judge that, based on the application filed on October 25, 1990, the claimant is not entitled to a period of disability insurance benefits under sections 216(i) and 223, respectively, of the Social Security Act.

## V. DISCUSSION

 This is an action pursuant to 42 U.S.C. § 1383(c) to obtain judicial review of a final determination by the Secretary.[1] Re-

---

**1.** Section 1383(c)(3) provides, in pertinent part, as follows: "[t]he final determination of the Secretary after a hearing ... shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Secretary's

view is limited to determining whether the Secretary's decision is based on substantial evidence and whether the Secretary applied the correct legal standard. *Hamilton v. Secretary of HHS*, 961 F.2d 1495, 1497 (10th Cir.1992); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988). If the Secretary's factual findings are supported by substantial evidence, the court must give them conclusive effect. 42 U.S.C. § 405(g). Substantial evidence must be more than a mere scintilla, but may be less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989). In applying these standards, the court must bear in mind that the purpose of the Social Security Act is to ameliorate some of the rigors of life for those who are disabled or impoverished. *Dvorak v. Celebrezze*, 345 F.2d 894, 897 (10th Cir. 1965).

The specific question before this court is whether there is substantial evidence in the record supporting the date determined by the Secretary as the "onset date of disability." The court finds the answer in the negative.

■ Social Security Ruling 83-20 articulates the policy for determining the onset date of disability.[2] SSR 83-20 stresses that determining the onset date of disability is critical in many cases because it may affect the period for which the individual can be paid. *Spellman v. Shalala*, 1 F.3d 357, 361 (5th Cir.1993). Therefore it is essential that the onset date be correctly established and supported by the evidence. *Id.* Those factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence.

■ The starting point for determining the onset date is the claimant's allegation as to when the disability began. Furthermore, the date the claimant stopped working is

often very significant. *Id.* The claimant's stated onset date is used when it is consistent with the available medical evidence. *Id.* See also *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir.1990).

In this case, plaintiff alleged that the disability began on or about March 15, 1986. At that time she was no longer able to work because she could not concentrate, her lethargy and drowsiness from medication made it impossible for her to attend to the details required by her job, she was fearful of having seizures at work, she found her skills in writing, spelling, and grammar had significantly diminished and she was, at times, incontinent.

The first two prongs of the test under SSR 83-20 have clearly been met. Plaintiff noted that her period of disability began in March, 1986, and her employment history supports that claim. The third prong, medical evidence, is not as clear.

■ Remembering that the critical date is the date of onset of disability, not the date of diagnosis, SSR 83-20 recognizes that "it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." *Swanson v. Secretary of Health & Human Services*, 763 F.2d 1061, 1065 (9th Cir.1985). In cases where the precise date is unknowable or ambiguous, it is necessary to infer the date after analyzing the evidence which describes the history and symptomatology of the disease process. *Spellman*, 1 F.3d at 361.

■ If the medical evidence regarding the onset date of disability is ambiguous, the onset date must be inferred. SSR 83-20 requires that the inference be based on an informed judgment. Because an ALJ may not speculate as to the seriousness of a plaintiff's medical condition, an inferred onset date must be made only after consulting a medical advisor. *Id.* 1 F.3d at 363; *see DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir.1991); *see generally Lund v. Weinberger*,

final determinations under section 405 of this title."

**2.** See SSR 83–20 (1983). Social Security Rulings are "binding on all components of the Ad-

ministration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that have been adopted by the Administration."

520 F.2d 782, 785 (8th Cir.1975) (ALJ is not proper person to make medical judgments).

■ A medical advisor was not utilized in this case. Rather the ALJ misstated the evidence in several instances and improperly speculated as to the severity of plaintiff's seizure disorder and the limitations it placed upon her. For example, the ALJ implied in his findings that plaintiff only had seizures when she was off her medication. This is simply not an accurate account of the record. Furthermore, he also failed to note that plaintiff suffered serious medication side effects of lethargy, drowsiness and inability to concentrate. Plaintiff's medical caretakers obviously found plaintiff's complaints meritorious because they consistently sought to find a medication which would properly control the seizures without inducing the negative side effects. Unfortunately for plaintiff a complete solution was never found.

The ALJ also stated that plaintiff had reported to Dr. Ables on December 17 and 18, 1988, that she was not taking her medication regularly. First, Dr. Gordon Kelly is the physician who reported this information and the information reported was more extensive: "She states that although she is not terribly regular in taking her medication, she does manage to take three doses a day almost every day and she does not believe there has been any problem with her compliance last week." That coupled with the statement that "her Tegretol level was technically within therapeutic range" leads to a conclusion far different than the one to which the ALJ came. In addition, the conclusion by the ALJ that her seizures were caused by her failure to take medication is directly contradicted by the medical report which stated "the cause for her brief spell of status epilepticus Friday night is not clear."

Finally, as one more example of the speculative or incomplete analysis by the ALJ, it was stated: "The treatment notes and reports of physicians who have treated her for the seizure disorder indicate that her condition was fairly well controlled until early in 1990. At least one treating physician, Gordon R. Kelley, M.D., indicated that as late as September 13, 1990 the claimant could work at desk work." The record, in fact, shows at least four instances of reports of poorly controlled seizure disorder including at least one comment that the disorder will probably never be controlled.

Concerning Dr. Kelley's statement, the ALJ clearly took the statement out of context. Dr. Kelley's full statement was: "She has been managed with Mysoline and Tegretol in the past few years with fairly good results but complains of sedation on these medications. She has been unemployed in part because of her epilepsy. It is not safe for her to drive, operate heavy equipment or to be put in situations of responsibility where others lives would depend on her alertness. This includes simple jobs such as babysitting. It is conceivable that she could be employed at desk work or some other form of supervised labor, but her lack of transportation and the possibility of her having seizures has made her virtually unemployable." Dr. Kelley's comments clearly paint a picture of someone whose capacity to perform work is virtually nonexistent. However, the ALJ latched on to one segment of that statement and turned it in to an endorsement of plaintiff's ability to do work. The ALJ inferred a date of onset of disability from information that was ambiguous.

Because this inference cannot be made without the assistance of a medical advisor and because the services of a medical advisor were not utilized, this case must be remanded to the ALJ for a determination of the date of onset of disability. That determination must be made with the assistance of a medical advisor. *See Dye v. Bowen,* 1989 WL 159379 (D.Kan.1989).

**IT IS THEREFORE BY THE COURT ORDERED** that this matter is **REVERSED AND REMANDED** for determination by the Administrative Law Judge, with the assistance of a medical advisor, of the date of onset of disability.