# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
August 19, 2015

Lyle W. Cayce
Clerk

No. 15-10152
Summary Calendar

ETHEL S. WHITE; SHAILESHKUMAR ARVINDBHAI SHAH,

> Plaintiffs - Appellants

v.

UNITED STATES OF AMERICA, through the Attorney General Loretta
Lynch.; LORETTA LYNCH, U. S. ATTORNEY GENERAL, for the United
States Department of Justice; JEH JOHNSON, Secretary of the Department
of Homeland Security; LORI SCIALABBA, Director of the United States
Citizenship and Immigration Services,

> Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:12-CV-4403

Before REAVLEY, SMITH, and HAYNES, Circuit Judges.

PER CURIAM:*

Plaintiff–Appellant Shaileshkumar Arvindbhai Shah is a native and
citizen of India who entered the United States with his wife and children on
November 8, 2000.   Though authorized to stay only six months, Shah has

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

remained in the United States.  On May 13, 2005, Shah divorced his wife Amiben Shah and, three months later, married Plaintiff–Appellant Ethel White, a United States citizen.

A few months later, on November 27, 2005, White filed an I-130 visa petition seeking to have Shah granted permanent resident status as her spouse.  Based on a finding that the marriage was "entered into for the purpose of evading the immigration laws," United States Citizenship and Immigration Services ("USCIS") denied that application.  *See* 8 U.S.C. § 1154(c).  Similar applications filed in 2008 and 2011 were also denied for the same reason.

Seeking an order setting aside the denial of the visa petition, Shah and White sued under the Administrative Procedure Act ("APA").  After the district court granted summary judgment in favor of the government, Shah and White appealed.

We review the grant of summary judgment *de novo* and, "[i]n reviewing the underlying agency decision denying [Appellants'] request, the general standard under the APA is whether the agency's final decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 627 (5th Cir. 2001) (quoting 5 U.S.C. § 706(2)(A); *Avoyelles Sportsmen's League, Inc., v. Marsh*, 715 F.2d 897, 904 (5th Cir. 1983)).  This review is "very narrow." *Delta Foundation, Inc. v. United States*, 303 F.3d 551, 563 (5th Cir. 2002) (quoting *Louisiana v. Verity*, 853 F.2d 322, 327 (5th Cir. 1988)).

In this case, we are presented with competing narratives.  Appellants point to, among other things, photographs, banks statements, evidence of cohabitation, and "testimony of their shared experiences" to paint a picture of a loving marriage that has lasted nearly a decade.  The government points to the suspicious timing of Shah's divorce and Appellants' marriage, to glaring

and significant inconsistencies in the testimony White and Shaw provided USCIS interviewers, and to evidence of deceit.

Under the APA standard of review, our "role is not to weigh the evidence pro and con," but rather to determine whether the denial of the permits was arbitrary and capricious. *See Delta Found., Inc.*, 303 F.3d at 563 (quoting *Verity*, 853 F.2d at 327). Accordingly, our focus is on the government's evidence. "The agency's factual findings are reviewed to determine only 'whether they are supported by substantial evidence.'" *Buffalo Marine Servs. Inc. v. United States*, 663 F.3d 750, 753 (5th Cir. 2011) (quoting *Alwan v. Ashcroft*, 388 F.3d 507, 510–11 (5th Cir. 2004)).

USCIS determined, as a matter of fact, that the marriage between Shah and White was "entered into for the purpose of evading the immigration laws." application. *See* 8 U.S.C. § 1154(c). If sustained, this factual finding dooms Appellants' visa petition as a matter of law. *See id.* As will be shown, that determination was supported by substantial evidence.

Shah married White less than 90 days after divorcing Amiben Shah, and White's first I-130 visa petition quickly followed. According to the government, this timing, "without more, create[s] a strong inference of marriage fraud." We need not remark on the probative weight of timing "without more," however, because there was much more.

In interviews conducted in connection with the three visa petitions, Shah and White repeatedly gave inconsistent testimony on subjects that should have provided them no difficulty. For example, with reference to the first visa petition, Shah and White gave irreconcilably conflicting accounts with regard to their first date, the circumstances of their engagement, and how they spent the Christmas holiday. With respect to the second visa petition, Shah and White give conflicting testimony with regard to the extent of hospitalization required by White, whether they had ever spent a night apart since marrying,

No. 15-10152

and perhaps most remarkably, where (and with whom) they had lived during the first two weeks of their marriage. With respect to the third visa petition, discrepancies related primarily to White's then-recent extended hospital stay, including the duration and frequency of Shah's visits during that period.

In addition to the foregoing non-exhaustive list of inconsistencies, the interviews also revealed conspicuous gaps in the couple's knowledge. For example, White testified that she has a degenerative disc disease that resulted from a car accident in 2000, while Shah believed her symptoms began suddenly in 2005. Further, though White was evicted and sued for back-rent during a time in which Shah supposedly lived with her, Shah did not know White had been evicted or the reason the previous landlords sued.

While these inconsistencies and gaps of knowledge are plainly probative, with respect to its third denial of the visa petition, USCIS relied on additional, evidence that the marriage was a fraud. Specifically, USCIS investigators visited the apartment complexes where Shah had lived and were told by staff at both facilities that he lived there with Amiben, *his ex-wife*, after 2005. As USCIS understatedly concluded, "[t]he information provided by [the apartment complexes] is contradictory to" the "claim to have resided together since marrying on August 4, 2005." Further a 2008 lease agreement entered into by White identifies one "Jeremy Proffitt" (and not Shah) as a co-lessee, and White's accompanying credit application lists Mr. Proffitt (and not Shah) *as her spouse.* Appellants failed to provide USCIS with any conclusive rebuttal of this evidence, a failure repeated before the district court and on appeal.[1]

---

[1] Appellants argue unconvincingly that the statements of the apartment workers should not have been accepted as credible "[b]ecause none of these 'witness' employees are well-acquainted with the Appellants." They do not address the White–Proffitt lease agreement and credit application.

No. 15-10152

Finally, USCIS obtained evidence that White provided fraudulent supporting documentation. Specifically, White provided USCIS with a "support letter" supposedly drafted by Matthew and Courtney Moseman, Appellants' one-time alleged landlords. When interviewed, White indicated that Shah sought and obtained the letter. But Shah indicated White sought and obtained the letter. Contacted directly, both of the Mosemans denied writing the letter and submitted written statements to that effect. USCIS therefore concluded the letter was fraudulent.[2]

To affirm, we require only "substantial evidence" supporting USCIS's factual determination regarding the nature of Appellants' marriage. *See Buffalo Marine Servs., Inc.*, 663 F.3d at 753. This incomplete survey of the evidence shows that standard was easily met in this case. *See Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (describing substantial evidence as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion"). Accordingly, the judgment is AFFIRMED.

---

[2] Appellants argue the Mosemans were "clearly biased" against them, and the government concedes Ms. Moseman "had good reason to be biased against White and Shah." This is because the previously mentioned eviction and lawsuit that Shah knew nothing about were both initiated by the Mosemans. Appellants' offered the Mosemans as alleged character witnesses and cannot very well complain when the USCIS credits their statements, especially statements that the proffered "support letter" was fraudulent.