Edward J. **RICHARDSON**, Plaintiff,

v.

Kenneth S. **APFEL, Commissioner of Social Security,** Defendant.

No. 7:96–CV–161–X.

United States District Court,
N.D. Texas,
Wichita Falls Division.

June 2, 1998.

---

Robert Morgan Hampton, True & Schrandt, Scott A. McMichael, West Texas Legal Services, Wichita Falls, TX, for Plaintiff.

Claude D. Brown, U.S. Attorney's Office, Fort Worth, TX, for Defendant.

### *ORDER REVERSING DECISION OF THE COMMISSIONER and FINDINGS OF FACT AND CONCLUSIONS OF LAW*

KENDALL, District Judge.

Before the Court is the Plaintiff's Brief, filed December 17, 1996, and the Defendant's Response, filed February 13, 1997. After carefully considering the briefing, record, and applicable law, the Court determines that the decision of the Commissioner was

not supported by substantial evidence of record and the Commissioner did not apply the proper legal standards, so that the Commissioner's decision is hereby REVERSED. The Court's findings of fact and conclusions of law are as follows:

### Procedural History

On July 1, 1985 Plaintiff/Claimant Edward Richardson applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401–433, and supplemental security income (SSI) benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383, alleging disability due to chronic lower back strain and torn lateral meniscus, left knee since February 23, 1983. (Transcript [hereinafter "Tr."] at 64–77). Richardson's claims were denied on August 14, 1985. (Tr. 86–92) Richardson filed a request for reconsideration (Tr. 93), and on October 30, 1985 the original determinations were affirmed. (Tr. 102–08) Richardson then requested a hearing by an administrative law judge ("ALJ"). (Tr. 111–12)

On February 6, 1986 ALJ Lindsey Martin convened a hearing on Richardson's claims. ALJ Martin issued her decision on May 15, 1986 (Tr. 13–20), in which she reviewed Richardson's work history and concluded that he cannot return to his past relevant work as a truck driver and apartment maintenance worker. Richardson had not engaged in substantial gainful activity since February 1983. ALJ Martin determined that, based on the medical evidence of two arthroscopic surgeries, lower back strain, and a light stroke, Richardson had severe impairments, including severe traumatic arthritis and lateral tibial plateau, but that these impairments do not meet or equal the criteria of any impairment or combination of impairments described in the Listing of Impairments, Appendix 1, Subpart P, Social Security Regulations No. 4. ALJ Martin determined that Richardson retained the residual functional capacity to perform the full range of sedentary work.

At the time of ALJ Martin's decision, Richardson was 43 years old, a "younger individual" under the regulations, with a 9th grade education. In light of Richardson's age, education, and past relevant work history, the ALJ consulted the Medical–Vocational Guidelines of Appendix 2, Subpart P, Regulation No. 4 and found that if Richardson possessed the residual functional capacity allowing for the full range of sedentary work, Medical–Vocational Rules 201.24 and 201.25 would direct a decision that Richardson be found "not disabled." In summary, Richardson was not under a "disability," as defined in the Social Security Act, at any time through the date of the ALJ's decision.

On June 16, 1986 Richardson requested review of the ALJ's decision by the Appeals Council. (Tr. 5–11) After considering the additional medical questionnaire sent by Richardson's attorney, on August 5, 1986 the Appeals Council denied Richardson's request for review, so that the ALJ's decision was the final decision of the Commissioner. (Tr. 3–4)

Having exhausted his administrative remedies, Richardson filed a lawsuit in the Northern District of Texas on October 1, 1986, case number 7:86–CV–086. On January 13, 1989, Magistrate Judge Averitte issued a Report and Recommendation recommending that Richardson's case be remanded for further administrative proceedings. On April 27, 1989, Judge Robinson adopted Magistrate Averitte's recommendation and remanded the case.[1]

On January 11, 1990, Richardson had a hearing before ALJ Donald Marrs, who issued his decision on February 27, 1990. ALJ Marrs found that Richardson had not engaged in substantial gainful activity since his claimed onset date of February 23, 1983, and that Richardson has a severe knee impairment which significantly limits his ability to perform basic work activities. The record did not show an impairment or combination of impairments which meet or equal the severity of any impairment or combination of impairments described in the Listing of Impairments, Appendix 1, Subpart P, Social Security Regulations No. 4. In particular, based upon medical expert Dr. Lowell's testi-

---

1. Neither the Report and Recommendation nor the Order adopting it are included in the record submitted by the Commissioner, so the Court does not know on what basis the case was remanded.

mony, the traumatic arthritis in Richardson's left knee did not meet the criteria of Listing 1.03 about arthritis, and his peroneal neuropathy in his left leg did not meet Listing 11.14. ALJ Marrs determined that Richardson could not perform his past relevant work, but that he had the residual functional capacity to perform sedentary work, and that he is not under a "disability" as defined in the Social Security Act. (Tr. 237–43)

After Richardson filed written exceptions to this decision, on March 12, 1991 the Appeals Council reversed the ALJ and remanded for another hearing for the ALJ to more fully develop the record in a number of areas pursuant to the district court's order, and for Richardson to undergo a consultative orthopedic examination and a medical assessment of his ability to do work-related activities. The Appeals Council directed the ALJ to re-evaluate Richardson's allegation of disability beginning with Richardson's claimed onset date of disability (February 23, 1983) through the date he was last insured for disability benefits (March 31, 1988). (Tr. 229–32)

Richardson's third ALJ hearing took place on October 24, 1991. ALJ Ralph Wampler issued his decision on January 21, 1992. ALJ Wampler determined that Richardson suffers from progressive degenerative joint disease which significantly limits his ability to perform basic work activity, but the record did not show an impairment or combination of impairments which meets or equals the severity of any listed impairment. He concluded that Richardson retained the residual functional capacity to perform the full range of sedentary work, and that he was not disabled. (Tr. 207–18) Richardson's attorney submitted a neurologist's opinion that Richardson has a severe disability (Tr. 193–94), but on January 25, 1993 the Appeals Council declined to review the third ALJ's decision. (Tr. 189–91)

Magistrate Judge Averitte reopened Richardson's previous district court case, and on March 21, 1994 he issued a well-reasoned, 28–page Report and Recommendation. (Tr. 489–516) Judge Averitte concluded that there was no substantial evidence to support the third ALJ's determination that Richardson has the residual functional capacity to perform the full range of sedentary work, so that the application of the Medical–Vocational Guidelines to determine disability was error. Judge Averitte summarized Richardson's medical record from the 1990 and 1991 ALJ hearings reflecting back problems, one transient ischemic attack, traumatic arthritis to the left knee, peroneal neuropathy, pain and stiffness, and diabetes mellitus. Richardson had also testified that he couldn't afford to see a doctor.

Richardson's 1986 medical records reflect traumatic arthritis of the left knee and common peroneal neuropathy, with slight joint space narrowing and minimal bony destruction of his left knee. X-rays revealed significant proliferative changes along the superior aspect of the left patella and minimal proliferative changes in the marginal portion of the joint space, and a small joint effusion with distention of the suprapatellar bursa. Dr. Bartel, Richardson's neurologist, stated that Richardson had instability of the left knee which markedly limited his ability to walk or stand. Richardson's Type II diabetes mellitus was diagnosed in 1988, and was helped with medication and diet.

In 1990, Richardson went to the Wichita General Hospital complaining of pain in his left shoulder and elbow and right flank. X-rays showed degenerative joint disease and calcification of the acromio-clavicular tendon. Orthopedist Dr. Huang noted in June 1991 that Richardson had walked with a cane since 1990. Dr. Bartel's evaluation in October 1991 stated that since his previous examination of Richardson in 1985, Richardson had right hemisphere stroke and degenerative joint disease of the left knee, and that he had observed Richardson stumbling or falling in 1985. Dr. Bartel's assessment of Richardson's limitations in 1985 were that he could not stand or walk at all during an 8–hour workday; he could never climb, balance, stoop, crouch, kneel or crawl; he had lost fine finger movements and fine sensibility of the left hand, and he was restricted from moving machinery because his knee instability and left side weakness made him unable to push heavy objects with any degree of reliability.

In June 1992, neurologist Dr. Banta examined Richardson and found evidence of distal atrophy as well as diffuse weakness. Dr. Banta opined that the cause was neuropathic but that further testing was necessary, that Richardson showed considerable weakness, had a severe disability, and that the amount of weakness would preclude a normal job occupation. Richardson would be unable to climb stairs or, because of poor grip strength, perform manual labor. An EMG and nerve conduction test revealed mild peripheral neuropathy and a myopathic pattern warranting further laboratory studies. Richardson was diagnosed with muscular dystrophy after a muscle biopsy in August 1992.

Judge Averitte determined that the third ALJ had arbitrarily rejected uncontroverted medical testimony that Richardson's supraspinatus syndrome of the left shoulder would affect his ability to reach, push, and pull because of pain upon abduction. The medical advisor at the hearing accepted these conclusions. The ALJ had also arbitrarily rejected uncontroverted medical testimony supporting Richardson's allegations of disabling pain. Judge Averitte noted that the record was replete with prescriptions for pain treatment. Dr. Lowell, the 1990 medical adviser, had opined that the impairments shown by the medical record could produce the pain and limitations of which Richardson complained. The ALJ's conclusion that Richardson's pain was not of such severity as to produce a nonexertional limitation was not supported in the record evidence.

Finally, Judge Averitte determined that the ALJ failed to consider the effects of prescribed treatment or medication on a disability in determining Richardson's ability to perform substantial gainful activity. Richardson had testified that he experienced drowsiness, dizziness, and nausea from some of his medications. Dr. Bell had testified that some anti-inflammatory medications cause drowsiness and that Richardson's medications could only cause drowsiness if they were "doubled up." The ALJ had dismissed Richardson's testimony of side effects by reasoning that the medical evidence contained no notes of his reports of these side effects to his physicians. Judge Averitte noted that

Richardson testified that he did complain to his physicians about the side effects of his many medications, and that mere silence in physician treatment notes of any complaint related to medication does not constitute "substantial evidence" when rebutted by Richardson's direct evidence to the contrary. Judge Averitte found no substantial evidence to support the ALJ's conclusion that Richardson did not suffer side effects from his medication.

In summary, Judge Averitte concluded that the ALJ's determination that Richardson has the residual functional capacity to perform the full range of sedentary work was not supported by substantial evidence of record. Judge Averitte recommended remand for further evaluation at step five of the sequential decision-making process. The Commissioner did not file any objections to the Judge Averitte's decision, and on April 5, 1994, Judge Belew issued a Judgment and Order adopting the Magistrate's Report and Recommendation, reversing and remanding. (Tr. 517–20)

On August 9, 1994 ALJ Mell J. Lacy, Jr. conducted Richardson's fourth ALJ hearing. ALJ Lacy issued his decision on January 11, 1995. (Tr. 478–85) The ALJ reviewed the record and testimony of Richardson's impairments of arthritis of the left knee (status post trauma and surgical repair), chronic lower back strain, and degenerative joint disease, and concluded that the severity of Richardson's impairments has not met or equaled the requirements of any of the listed impairments in the regulations. The Medical–Vocational Rules directed a finding that Richardson is "not disabled."

On February 28, 1996, the Appeals Council notified Richardson's attorney that it proposed to issue a decision finding that Richardson is under a disability which began June 18, 1992, but not prior to that. Richardson's attorney submitted his exceptions brief on March 12, 1996 (Tr. 469–74), in which he challenged the proposed decision on two alternative grounds: 1) that the proposed residual functional capacity finding prior to June 18, 1992 is not supported by substantial evidence and violates res judicata; and 2) that the date of onset of disability

should not be established without consulting a medical advisor. The brief noted that upon Richardson's reapplication for disability benefits following the appeal to federal court, Richardson was found disabled as of January 1993 and began receiving SSI disability benefits on that later application based on § 11.13 of the listings having been met.

The Appeals Council issued its decision on May 13, 1996, adopting in part and rejecting in part the ALJ's findings and conclusions as to Richardson's disability. (Tr. 466–68) The Appeals Council agreed with the ALJ that Richardson had the residual functional capacity for a full range of sedentary exertion prior to June 18, 1992, based on a consulting orthopedic specialist's report, negative X-ray studies, and a treating physician's report, combined with the fact that there was no evidence of any treatment between February 1989 and June 1991. The applicable Rules directed a finding that Richardson was not disabled. Because Richardson last met the special earnings requirements (20/40) for disability purposes under Title II on March 31, 1988, he could not be found entitled to a period of disability or to disability insurance benefits.

The Appeals Council found that Richardson was under a disability, however, beginning June 18, 1992, based upon the report of a consulting physician. This report demonstrated atrophy of both upper and lower extremities with profound loss of vibratory sense in the lower extremities, ataxic gait, and evidence of proximal muscle weakness, which was described as severe disability. A nerve conduction study was performed and a surgical muscle biopsy of Richardson's right leg on August 12, 1992 confirmed the diagnosis of muscular dystrophy. Thus, Richardson met section 11.13 of the Listing of Impairments.

Having exhausted his administrative remedies, Richardson filed his application to proceed *in forma pauperis* on July 17, 1996, which was granted and this lawsuit was filed on July 23, 1996.

### Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Austin v. Shalala,* 994 F.2d 1170, 1174 (5th Cir.1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir.1988). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Austin v. Shalala,* 994 F.2d at 1174. In applying the substantial evidence standard the Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Hollis v. Bowen,* 837 F.2d at 1383. However, the Court must scrutinize the record in its entirety to determine whether substantial evidence does indeed support the Commissioner's findings. *Id.*

To be entitled to benefits, a claimant must prove that he is disabled within the meaning of the Social Security Act. *Kane v. Heckler,* 731 F.2d 1216, 1219 (5th Cir.1984). The legal standard for determining disability under the Social Security Act is "the inability to engage in any substantial gainful activity due to physical or mental impairments which can be expected to either result in death or last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1); 42 U.S.C. § 1382(a)(3)(A).

The Commissioner's regulations establish a five-step sequential analysis to be used in evaluating a disability claim:

(1) Is the claimant currently working?

(2) Does the claimant have a severe impairment?

(3) Does the impairment meet or equal an impairment in Appendix 1?

(4) Does the impairment prevent Plaintiff from performing past relevant work? and

(5) Does the impairment prevent Plaintiff from doing any other work?

20 C.F.R. § 416.920. "A finding that a claimant is disabled or not disabled at any point in the five step process is conclusive and terminates the [Commissioner's] analysis." *Ab-*

*shire v. Bowen,* 848 F.2d 638, 640–41 (5th Cir.1988) (citing *Barajas v. Heckler,* 738 F.2d 641, 643 (5th Cir.1984)). A claimant has the initial burden of proving disability by establishing a physical or mental impairment lasting at least twelve months that prevents him from engaging in any substantial gainful activity. *Cook v. Heckler,* 750 F.2d 391, 393 (5th Cir.1985). If a claimant is able to demonstrate an inability to perform his past relevant work activity at step four, the burden shifts to the Commissioner to show that there is other work in the national economy which the plaintiff can perform. *Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir.1986); *Lewis v. Weinberger,* 515 F.2d 584, 587 (5th Cir.1975).

### Discussion

An enormous amount of precious judicial and administrative resources has been expended since Richardson applied for SSI and disability benefits 13 years ago. Richardson has been through four ALJ hearings, and this is the third time this Court has been asked to review his case. The Court concludes that the decision of the Commissioner was not supported by substantial evidence of record and the Commissioner did not apply the proper legal standards, so that the decision denying disability insurance benefits to Plaintiff/Claimant Edward Richardson is reversed and he shall be awarded benefits from his onset disability date of February 23, 1983.

Judge Averitte's second opinion of March 1994 thoroughly reviews Richardson's medical history up to that time, and the Court will simply summarize that information. Clearly, since an on-the-job injury in 1983, Richardson has been afflicted with progressive degenerative joint disease and numerous other ailments, including back problems, a light stroke, traumatic arthritis to the left knee requiring two arthroscopic knee surgeries, peroneal neuropathy, pain and stiffness, as well as diabetes mellitus. Richardson's 1986 medical records reflect traumatic arthritis of the left knee and common peroneal neuropathy, and X-rays revealed significant proliferative changes along the superior aspect of the left patella. Dr. Bartel, Richardson's neurologist, stated that Richardson had instability of the left knee which markedly limited his ability to walk or stand.

Although Richardson has often been unable to see a doctor because he doesn't have the money, a nerve conduction study and biopsy in August 1992 confirmed a diagnosis of muscular dystrophy. Finally, the muscle weakness and other ailments that had been plaguing Richardson for years had a description and diagnosis. The Appeals Council was belatedly willing to acknowledge that Richardson indeed was under a disability and entitled to disability insurance benefits, but it set his onset date as June 18, 1992, and no benefits were awarded for the period prior to that.

■ Although Judge Averitte was very specific about the deficiencies of the third ALJ's findings, the fourth ALJ failed to address those deficiencies. First, Judge Averitte determined that the third ALJ had arbitrarily rejected uncontroverted medical testimony that Richardson's supraspinatus syndrome of the left shoulder would affect his ability to reach, push, and pull because of pain upon abduction. The fourth ALJ made no reference to these limitations, or acknowledged that the medical advisor had also accepted that Richardson had these limitations.

■ Second, Judge Averitte determined that the third ALJ had arbitrarily rejected uncontroverted medical testimony supporting Richardson's allegations of disabling pain, although the record was replete with prescriptions for pain treatment. Dr. Lowell, the 1990 medical adviser, had opined that the impairments shown by the medical record could produce the pain and limitations of which Richardson complained. In the Fifth Circuit, to prove disability resulting from pain, an individual must establish a medically determinable impairment that is capable of producing disabling pain. Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity. *Ripley v. Chater,* 67 F.3d 552, 556 (5th Cir.1995). The fourth ALJ did not address this testimony with respect to Richardson's pain, apparently rejecting it out of hand without providing spe-

cific reasons supported by evidence in the record or proper analysis.

Finally, Judge Averitte determined that the third ALJ failed to consider the effects of prescribed treatment or medication on a disability in determining Richardson's ability to perform substantial gainful activity. Richardson had testified that he experienced drowsiness, dizziness, and nausea from some of his medications, and that he had complained to his physicians about the side effects of his many medications. Dr. Bell had testified that some anti-inflammatory medications cause drowsiness. The fourth ALJ acknowledged that Richardson "said that he has taken prescribed medications for his symptoms for a long time and that he has side effects of nausea and drowsiness," but failed to point to any evidence in the record to support his apparent conclusion that the side effects of Richardson's medications did not constitute a nonexertional limitation.

The Court cannot uphold the Commissioner's decision that Richardson was not disabled prior to June 18, 1992 because there is not substantial evidence to support that decision. Factors relevant to the determination of the date of disability include the individual's declaration of when his disability began, his work history, and available medical history. *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir.1990). The Commissioner must use the claimant's statement alleging when disability began as the starting point in determining the onset of nontraumatic disabilities, and the claimant's onset date is used as the established onset date when it is consistent with available evidence. *Id.* Furthermore, a claimant's onset date may be rejected only if reasons are articulated and the reasons given are supported by substantial evidence. *Id.*

In this case, it is Richardson's, and not the Commissioner's, proffered onset date which is supported by substantial evidence. The medical evidence demonstrates, and the Commissioner acknowledges, that Richardson suffers from muscular dystrophy, a progressive, degenerative disease. As Richardson's attorney ably points out in his brief, whether his illness was given a name back then or not, his symptoms going back to his onset date are consistent with muscular dys-

trophy. Each of the four ALJs noted that Richardson had not worked since his claimed onset date. There is not substantial evidence in this record, developed over 13 years, to support the Commissioner's rejection of the February 23, 1983 onset date claimed by Richardson.

The Court concludes that further remand would be pointless and a further waste of administrative resources. The fourth ALJ acknowledged as much:

> with the passage of time since the claimant's original application, it has become increasingly difficult to determine the claimant's functional capacity during the relevant time. A further remand of this case for such determination would serve no purpose other than to unnecessarily protract once again a final resolution of this claim.

(Tr. 484) It is therefore ORDERED that the Commissioner's decision is REVERSED, and the Court finds that Edward J. Richardson was disabled as of February 23, 1983. The Commissioner is ORDERED to pay to Edward J. Richardson all past due disability insurance benefits beginning on the date of disability, February 23, 1983.

### Conclusion

For the reasons discussed above, judgment will be entered REVERSING the Commissioner's decision.