Barbara J. STEVENSON

v.

Kenneth S. APFEL, Commissioner of
the Social Security Administration.

No. Civ. A–99–CA–785 JN.

United States District Court,
W.D. Texas,
Austin Division.

Sept. 18, 2000.

Harold C. Phillips, Legal Aid of Central Texas, Austin, TX, for Barbara J. Stevenson, plaintiff.

Susan B. Biggs, Assistant United States Attorney, San Antonio, TX, for Kenneth P. Apfel, defendant.

## ORDER

NOWLIN, Chief Judge.

On 17 October 1994, Plaintiff Barbara Stevenson filed an application for supplemental insurance benefits under Title XVI of the Social Security Act. Her request for benefits was denied. Plaintiff then requested a review of this decision before an Administrative Law Judge (ALJ) which was held 2 April 1997. Plaintiff was not represented by counsel at the hearing. The ALJ upheld the initial determination that Plaintiff was not under a disability as that term is defined by the Social Security Act. In addition, the ALJ found the following:

1. Plaintiff is 44 years old (47 as of the date of this order);

2. Plaintiff has a high school education;

3. Plaintiff has not acquired any work skills that are transferable to the skilled or semiskilled work functions of other work;

4. Plaintiff is unable to perform manipulative maneuvers with her right hand;

5. Plaintiff is unable to climb, balance, stoop, kneel, crouch or crawl;

6. Plaintiff must avoid extreme cold, extreme heat, vibration, lung irritants, unprotected heights and moving machinery;

7. Plaintiff has severe fibromyalgias versus lupus, insulin-dependent diabetes mellitus, hypertension, a history of asthma, and a history of headaches;

8. Plaintiff can perform a "significant number of jobs in the national economy." (Social Security Record ("SSR") at 20–21.)

Plaintiff appealed the ALJ's decision to the Social Security Administration Appeals Council. On 4 October 1997, the Appeals Council concluded there was no basis for review and that the ALJ's ruling was the final decision of the Commissioner of Social Security ("Commissioner") (SSR at 5.)

On 7 December 1999, Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability benefits. This cause was referred to a United States Magistrate Judge for findings and recommendations pursuant to 28 U.S.C. § 636(b) and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. The Magistrate Judge filed his Report and Recommendation on 18 August 2000 (Clerk's Doc. No.

20). Plaintiff filed her Objections to Report and Recommendations of United States Magistrate (Clerk's Doc. No. 21) on 30 August 2000. In light of the Objections, the Court has undertaken a *de novo* review of the entire case file in this cause. The Court REJECTS the Report and Recommendation of the United States Magistrate and REVERSES and REMANDS this case to the Social Security Administration for a new hearing consistent with this Order.

I

■ This Court's review of the Commissioner's final decision is limited to whether it is supported by substantial evidence in the record and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Austin v. Shalala,* 994 F.2d 1170, 1174 (5th Cir. 1993). "Substantial evidence is more than a scintilla, less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir.1983). In applying this standard, this Court will not reweigh the evidence nor substitute its decision for that of the Commissioner. *Villa v. Sullivan,* 895 F.2d 1019, 1022 (5th Cir.1990). If supported by substantial evidence, the Commissioner's findings are conclusive and are to be affirmed. *Richardson v. Perales,* 402 U.S. 389, 391, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). However, this Court must "scrutinize the record in its entirety to determine whether substantial evidence does indeed support the [Commissioner's] findings." *Ransom v. Heckler,* 715 F.2d 989, 992 (5th Cir.1983).

■ In the administrative proceedings below, it is the duty of the ALJ to develop the facts relative to a claim for benefits fully and fairly. *Kane v. Heckler,* 731 F.2d 1216, 1219 (5th Cir.1984); 20

C.F.R. § 410.640 (2000). When he fails in that duty, he does not have before him sufficient facts on which to make an informed decision. *Kane,* 731 F.2d at 1219. Consequently, his decision is not supported by substantial evidence. *Id.* Moreover, the ALJ's "basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with the hearing procedures appears before him." *Id.* This duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Id.* However, this Court will only reverse for failure to adequately develop the record by the ALJ on a showing of prejudice by the Plaintiff. *Id.* at 1220.

II

■ It is the opinion of this Court that the ALJ failed in this duty in Stevenson's case, and as such, his decision is not supported by substantial evidence. At the 2 April 1997 hearing, the ALJ elicited testimony from the Plaintiff as to her various ailments. Subsequently, the ALJ questioned a vocational expert ("VE"), Calvin Turner, in order to determine what occupations, if any, the Plaintiff may be able to perform. The VE's testimony, in relevant part, was as follows:

> **ALJ** Can you tell me—I'm going to ask you a hypothetical question now.
>
> **ALJ** Assuming I find a 43–year–old claimant with a 12th grade education, high school degree, with no work history but with the education as testified to by Ms. Stevenson and with her background experience. This hypothetical claimant is limited to less than a full range of sedentary work with the following limitations. Can occasionally lift 10 pounds, frequently lift less than 10 pounds, stand or walk with normal breaks. This hypotheti-

cal claimant requires medically required hand held assistive devices necessary for ambulation. She must periodically alternate sitting and standing through leg pain or discomfort, push and pull limited in upper extremities as a result of some surgical procedure. This hypothetical claimant has lost effective use of her right hand and she is right hand dominant. Can never climb, balance, stoop, kneel, crouch or crawl. Manipulative limitations in her right hand she is limited in reaching in all directions, handling and fingering and feeling. There are no visual limitations, no communicative limitations, should avoid all exposure, extreme heat and cold, avoid moderate exposure to wetness, humidity, avoid unlimited as to noise. Is there any problem with vibrations, doctor?

**DR. ARMSTRONG** (Medical Expert) There probably would be a problem with that.

**ALJ** And must avoid all exposure to vibration. Does she have any respiratory problem with her asthma, so she should avoid all exposure to fumes, odors and ventilation and avoid hazardous machinery because of her inability to stand or walk and uses a walker. Are there any jobs available for such a hypothetical claimant to perform?

**VE** Yes, Your Honor, there are. One would be a surveillance system monitor for government service and that is sedentary, unskilled labor and with the limitations that will provide for less than full range of sedentary work, that occupation. In Texas there are 6,900 employed and in the United States 45,324.

**ALJ** This is what now. Systems monitor?

**VE** It's a surveillance system monitor like at the lottery and a couple of state agency buildings in a lot of places that have security and a lot of banks now they have—

**ALJ** I want to make sure that we're all saying the same (INAUDIBLE). You're testifying that the systems surveillance monitor does not have to lift more than occasionally 10 pounds?

**VE** Yes, Your Honor.

**ALJ** And can have, can use or because of an impairment has to use a walker. That would not preclude a person that uses a walker to ambulate from being a surveillance systems monitor. Is that correct?

**VE** Yes, Your Honor. The issue with using the walker in defining for, for this occupation is sedentary should be seated at a monitor, at a screen should be seated and most employers can't because the ADA discriminate if they have to use appliances for work or not. But if she did have to go to somewhere from the monitor to maybe a station or to her supervisor, she would have to use the walker then.

**ALJ** But she could still perform the work?

**VE** Yes, she would.

**ALJ** And she is, in pushing and pulling she is limited in her left hand because of a surgical procedure. She does not have to—a person that is limited in upper extremity, right hand dominant, can handle this job?

**VE** Yes, Your Honor. Normally, you'd be pressing buttons. *There would be a issue if she had to maybe fill out a report occasionally* or something and she could do that (emphasis added).

**ALJ** And this person never has to climb, balance, stoop or crouch or crawl?

**VE** No, they do not.

**ALJ** And we've already talked about the manipulative limitations. This person is limited in reaching, handling, fingering and feeling in the right hand but could still do that job?

**VE** Yes, they would.

**ALJ** And this person has no visual limitations, no communicative limitations and this person does not have to be exposed to extreme heat or cold?

**VE** No, Your Honor.

**ALJ** Or vibration or fumes or odors or hazardous machinery?

**VE** No, Your Honor.

**ALJ** Any other jobs?

**VE** Well, Your Honor, the other occupations that I selected that are sedentary, unskilled are more of assembly type occupations, even the least exposure to environmental conditions would be an assembler of optical goods, which is sedentary, unskilled but the problem there would be we may be around a few vibrations and also some machinery. And so that would eliminate it.

**ALJ** All right. So you limited your testimony this hypothetical person can do surveillance system monitor?

**VE** Yes, Your Honor.

**ALJ** *Now, if I add to the hypothetical that as the result or in addition to my first hypothetical that this, as a result of medication, this person needs to lay down several times a day would that preclude her from being competitive in this work* (emphasis added)?

**VE** *It would, Your Honor. She would not be competitive* (emphasis added).

**ALJ** Is there anything else that you want to ask the doctor or Mr. Turner, Ms. Stevenson?

**STEVENSON** No, Sir.

**ALJ** Did you understand?

**STEVENSON** Yes, Sir. (SSR at 56–60.)

Initially, the VE testified that of all possible occupations available in the United States the "hypothetical claimant" [1] could perform exactly one surveillance-system monitor.[2] At two points in the VE's testimony subsequent to this, the VE testifies in response to questioning by the ALJ that a limitation of the hypothetical claimant

---

1. The use of a hypothetical claimant is a standard method employed by an ALJ in a Social Security disability hearing and is a thinly-veiled reference to the actual claimant in the case. The ALJ incorporates all of the actual claimant's disabilities that are recognized by the ALJ and then queries a vocational expert as to which occupations would be available to such a hypothetical claimant. *See Bowling v. Shalala,* 36 F.3d 431, 435 (5th Cir.1994).

2. *The Dictionary of Occupational Titles* is the official United States Department of Labor publication containing job descriptions for all officially recognized occupations—some 12,-741 in total. The job description for surveillance-system monitor is as follows: 'Monitors premises of public transportation terminals to detect crimes or disturbances, using closed circuit television monitors, and notifies authorities by telephone of need for corrective action: Observes television screens that transmit in sequence views of transportation facility sites. Pushes hold button to maintain surveillance of location where incident is developing, and telephones police or other designated agency to notify authorities of location of disruptive activity. Adjusts monitor controls when required to improve reception, and notifies repair service of equipment malfunctions. GOE: 04.02.03 STRENGTH: S GED: R3 M1 L3 SVP: 2 DLU: 86." Two points about this definition bear noticing. First, this job is limited to transportation terminals, not "the lottery and a couple of state agency buildings" as the VE in this case testified. Second, "GED: L3" refers to a Level 3 Language Development requirement for the job in question. Level 3 Language Development requires, *inter alia,* "Write reports and essays with proper format, punctuation, spelling, and grammar, using all parts of speech."

could be an "issue" or that the hypothetical claimant "would not be competitive" for the this one occupation. First, the VE testified that it would be an "issue" if the hypothetical claimant were required to fill out an occasional report. This was in response to a question by the ALJ positing that the right-hand dominant hypothetical claimant was limited to use of her left hand due to the effects of a "surgical procedure" on her right hand. As stated in note two above, the occupation of surveillance-system monitor requires writing "reports and essays." In the ALJ's final report, he in fact found that the Plaintiff was unable "to perform manipulative maneuvers with the right hand." (SSR at 21.)

Second, the VE testified that the hypothetical claimant "would not be competitive" for the job of surveillance-system monitor if this person had to "lay down several times a day." This answer was in response to a question by the ALJ positing that the hypothetical claimant may need to rest periodically "as a result of medication." Stevenson testified as to at least two prescription medications she took that caused drowsiness. The ALJ made no finding in his final report as to the effect of the Plaintiff's prescription medication on her ability to perform the one job potentially available to her. That would appear to leave the "hypothetical claimant" with no possible occupations out of the 12,741 possible in United States. If that is indeed the case, this Court is fairly certain that this makes the Plaintiff "disabled" under any plausible definition.

These two inconsistencies in the testimony of the vocational expert are exactly the type of errors that counsel for the Plaintiff would have seized upon had the Plaintiff been represented by counsel. Accordingly, this is the exact type of situation that the admonition of *Kane* is designed to prevent.

The ALJ in this case did not live up to his "special duty" as prescribed by *Kane*, resulting in a decision that may have been different had the ALJ fulfilled this duty.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the United States Magistrate Judge's Report and Recommendation filed in this cause is REJECTED by this Court.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this cause is hereby REVERSED and REMANDED to the Social Security Administration for a new hearing on all issues relating to the Plaintiff's disability status pursuant to 42 U.S.C. § 405(g) sentence four.

IT IS FURTHER ORDERED that this cause is CLOSED and that any pending motions are DISMISSED AS MOOT.